**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **09-05005-dd**

### ORDER ON MOTION TO SELL FREE AND CLEAR OF LIENS

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/02/2010**



US Bankruptcy Court Judge
District of South Carolina

Entered: 03/03/2010

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Chuck's Construction Co., Inc.,<br><br>Debtor(s). | C/A No. 09-05005-DD<br><br>Chapter 11<br><br>**ORDER DENYING APPLICATION FOR SALE** |

THIS MATTER is before the Court on the Notice and Application for Sale of Property Free and Clear of Liens and Judgments filed by Chuck's Construction Co., Inc. ("Debtor") on December 29, 2009 and amended on December 30, 2009 ("Motion"). An objection to Debtor's Motion was filed by the United States Trustee ("UST") on January 13, 2010. Following a hearing the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014.

## *FINDINGS OF FACT*

Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 7, 2009. The Debtor is a construction company specializing in site construction, dirt hauling, subdivisions, logging and water and sewer infrastructure. It remains in possession of its assets and continues to operate its business. The Debtor reported ownership of a number of pieces of equipment in the schedule of assets filed with the court. Debtor has decided to sell certain pieces of equipment that it considers unnecessary to its ongoing business.

On October 28, 2009 Debtor filed an application to employ Palmetto Machinery, LLC ("Palmetto") as an equipment sales agent. Palmetto's duty under the application was to coordinate the execution of a sales contract for a 2006 International service truck.

In its application to employ Palmetto, the Debtor asserted that Palmetto was competent and familiar with the equipment being sold and the procedure to sell equipment for the bankruptcy estate. The Court entered an order granting the application on November 13, 2009. An order approving the sale of the 2006 International service truck was also entered on November 13, 2009. A Report of Sale was filed by the Debtor on January 13, 2010 showing the completion of the sale and distribution of proceeds. Palmetto was paid a commission of $3,000 for the sale.

On December 29, 2009 the Debtor filed the Motion giving rise to this order and proposed the sale of a 2006 Caterpillar 287B Loader (S/N ZSA03219) with GP Bucket and one 2006 Fecon Cutter Head (S/N 74H075A6) ("Equipment") to Palmetto or its assigns for $28,000. The motion reported an appraisal price for the Equipment of $28,000, although it does not disclose the source of the appraisal. It also disclosed Palmetto's earlier employment as sales agent for the one particular piece of equipment. The Motion was subsequently amended on December 30, 2009 to include the electronic signature of Debtor's counsel. A Notice of Hearing pertaining to Debtor's Motion was issued by the Clerk of Court on January 8, 2010 for a possible hearing on February 16, 2010. On January 13, 2010 the UST filed an objection to the Motion. The UST contends that the purchase of bankruptcy estate property by a professional employed in a bankruptcy case, even when the professional's services are not ongoing, should be prohibited in order to protect the integrity of the bankruptcy system.

A hearing on the Motion and the UST's objection was held on February 16, 2010. At the hearing Debtor's counsel proposed to substitute Garden Perfect, LTD, a company with a principal place of business in Italy, as the buyer with a purchase price of $34,500

plus shipping. Debtor's counsel offered the following additional details. On December 8, 2009 the Debtor accepted, subject to court approval, an offer of $28,000 from Palmetto for the Equipment. On December 14, 2009 Palmetto submitted an invoice to Garden Perfect for $34,500 plus shipping costs. Garden Perfect responded by remitting, in the form of a down payment, $4,980 to Palmetto. On December 17, 2009 Palmetto wired $28,000 to an account of Debtor's counsel. The motion to sell was then filed on December 29, 2009.

The UST supplemented the timeline provided by counsel for the Debtor adding that after the January 13, 2010 objection Palmetto reported to the UST that it would withdraw as purchaser and that Palmetto had found a substitute buyer at the $28,000 purchase price. The UST required documentation of this from Palmetto. The documentation showed that the substitute purchaser was actually paying $34,500 plus shipping for the equipment. The Court also learned that Palmetto had a pre-petition relationship with Debtor. Finally, it was disclosed that at the time of the February 16, 2010 hearing the Equipment was already in possession of Garden Perfect in Italy.

The Debtor contends that the sale of the Equipment is necessary to Debtor's ability to make adequate protection payments to other secured creditors in the coming months and seeks Court approval of the sale to Garden Perfect.

## *CONCLUSIONS OF LAW*

Under chapter 11 the Bankruptcy Code, a debtor in possession enjoys the rights, powers and duties of a trustee. 11 U.S.C. 1107(a). The Bankruptcy Code authorizes the debtor in possession to operate its business. 11 U.S.C. § 1108. Certain activities outside the ordinary course of business require notice to creditors and approval by the court.

Sales of property outside the ordinary course of business fall within this category. 11 U.S.C. § 363(b)(1). A proposal to sell property outside of the ordinary course of a debtor's business generally requires at least twenty-one (21) days notice. Fed. R. Bankr. P. 6004(a), 2002(a)(1).

In the District of South Carolina local rules require a trustee or debtor in possession seeking to sell property to file a notice of sale specifying the terms of the sale including: (1) whether the sale is public or private; (2) a description of the property to be sold; (3) the price and other terms of sale, and for an auction whether with or without reserve; (4) the appraised value; (5) the identity of the buyer including full name, address, relationship to debtor and interest in the case if the proposed sale is private; (6) the time and place of sale; (7) contact information for any sales agent, auctioneer, or broker; (8) the terms of compensation to the sales agent, auctioneer, or broker including the amount of commission, method of computation, and any cap on expenses; (9) whether the debtor has claimed an exemption; (10) the proceeds estimated to be paid to the estate; and (11) whether a waiver of the Fed. R. Bankr. P. 6004 stay is requested. SC LBR 6004-1.

The proper beginning point for this ruling lies with a review of cases dealing with insider purchases of bankruptcy estate property. These cases provide a context for the slippery slope Palmetto descended. Courts have divided over whether to adopt a *per se* rule regarding sales of bankruptcy estate property to insiders and estate professionals, yet all note the public policy against appearances of impropriety which would undermine the integrity of the bankruptcy system. Allowing a professional to take advantage of insider information concerning a bankruptcy estate conveys an impression of a corrupt system.

One court of appeals long ago stated the overarching principle that properly guides this court's decision:

> [N]o consideration of public policy is deeper grounded upon fundamental principles – upon principles which reach the very foundations of judicial authority – than that courts and court officers must be disinterested in the management of estates committed to their charge. It cannot be permitted that officers appointed by courts to perform duties regarding property in custody of the law should speculate therein. It cannot be permitted that court officials should use their official positions for personal profit. The question is not one of fraud or good faith, of gain or loss to the estate, in a particular instance. The rule goes far deeper than that. It is applicable in every case in order to secure and maintain the impartial administration of justice. Upon no courts is the obligation to enforce these principles of public policy greater than upon the courts of bankruptcy …. The one thing … which creditors and bankrupt alike have the right is expect … is disinterestedness ….

*In re Frazin & Oppenheim*, 181 F. 307, 310 (2d Cir. 1910).

Several courts have held that neither the trustee, a debtor in possession, nor their professionals may directly or indirectly acquire assets of a bankruptcy estate. *See e.g., In re Crestview Funeral Home, Inc.*, 287 B.R. 832, 837–38 (Bankr. D.N.M . 2002) (ordering an auctioneer's fees disgorged since he and his contract employees bought property at the auction); *In re Allied Gaming Management, Inc.*, 209 B.R. 201 (Bankr. W.D. La. 1997) (holding that an estate accountant cannot participate in ownership of the company acquiring the debtor under the plan of reorganization); *In re Sauer*, 191 B.R. 402 (Bankr. D. Neb. 1995) (preventing the purchase of a foreclosed home by counsel for the debtor in possession); *In re Rahe*, 178 B.R 801 (Bankr. D. Neb. 1995) (finding that it is unethical and criminal for trustee's counsel to purchase estate property); *In re Q.P.S., Inc.*, 99 B.R. 843 (Bankr. W.D. Tenn. 1999) (holding that a debtor in possession's accountant was prohibited from buying a car from the bankruptcy estate). In fact, certain insider purchases violate 18 U.S.C. § 154, which provides:

> A person who, being a custodian, trustee, marshal, or other officer of the court—
> > (1) knowingly purchases directly or indirectly, any property of the estate of which the person is such an officer in a case under title 11;
> 
> …
> 
> shall be fined under this title and shall forfeit the person's office, which shall thereupon become vacant.

Other courts have held that the purchase of assets of the estate does not constitute a *per se* violation of fiduciary obligations. *Cornerstone Products, Inc. v. Stopol, Inc. (In re Cornerstone Products Inc.)*, 416 B.R. 591, 611 (Bankr. E.D. Tex. 2008); *Fulton State Bank v. Schipper (In re Schipper)*, 109 B.R. 832, 835-36 (Bankr. N.D. Ill. 1989); *In re Brook Valley IV*, 347 B.R. 662, 675-76 (8th Cir. BAP 2006). These cases hold that a fiduciary may buy assets of a debtor if there are arm's length good faith negotiations with full disclosure. *See In re Apex Oil Co.*, 92 B.R. 847, 869-70 (Bankr. E.D. Mo. 1988). Where a fiduciary does purchase assets from a bankruptcy estate, it is the fiduciary's burden to demonstrate that the transaction was inherently fair by showing that the circumstances of the transaction were at arm's length. *In re Brook Valley IV*, 347 B.R. at 676. The sale of estate property outside the ordinary course of a debtor's business must be in the estate's best interest, shown by full disclosure and good faith negotiation. *Id.* These cases leave to the court the responsibility of ensuring good faith, protecting the interests of the various parties, and guarding the integrity of the process.

Whether the *per se* or case by case rule is adopted, the sale cannot be approved in this instance. A court cannot guard the integrity of the system when the facts are not known or, as here, are falsified. In this case, Palmetto was a sales agent employed by the Debtor and charged with representing or assisting Debtor with carrying out its responsibilities under the Bankruptcy Code. *See* 11 U.S.C. §327(a). Among the duties of

a debtor in possession is accountability for property of the estate. See 11 U.S.C. §§ 1107(a), 1106(a)(1), and 704(a)(2). In this regard and in the context of selling excess equipment, the Debtor and its professionals must preserve the property and reserve the value of it to further efforts at reorganization or to produce a return for creditors.

An otherwise unaffiliated buyer of bankruptcy estate property may properly come to the bargaining table with a profit motive. Palmetto is not such a purchaser. Palmetto knew of Debtor's property, its decision to sell excess property, and its need for cash because it had been employed as a professional to assist the Debtor. Rather than find a buyer for the Equipment and receive a commission as it previously had done, Palmetto, armed with insider information and taking advantage of a preexisting relationship, conceived a plan to putatively buy property while actually facilitating its transfer to a third party at an undisclosed profit.

Palmetto did not disclose that Garden Perfect would be the ultimate purchaser until an objection was filed by the UST. Even then Palmetto misrepresented the price to be paid by Garden Perfect. It was not until the UST demanded a review of all the documents concerning the proposed sale that Palmetto disclosed its arrangements with Garden Perfect for an actual sales price of $34,500 plus shipping. At the time of the February 16, 2010 hearing the Equipment had already been shipped to Garden Perfect in Italy, without Court approval.

That the details of a sale are so easily hidden or misrepresented strongly supports caution in ever approving a sale to an estate professional. Frankly, the better rule appears to prohibit such sales. Chapter 11 debtors often are cash strapped, anxious to quickly raise funds. This can lead to missteps or worse. Whether this debtor was complicit in the

transaction, a dupe or a victim remains for another day, perhaps another forum.  Clearly though the Debtor, a fiduciary, must take pains to be both forthright and astute in its dealings, proverbially as innocent as a dove and wise as a serpent.  It was not the latter and perhaps not the former.

The Debtor's Application for Sale is denied.

**AND IT IS SO ORDERED.**